IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LORRAINE DUFFY, an Individual, | : : | C.A. NO. |
| Plaintiff | : | |
| V | : | COMPLAINT (JURY TRIAL REQUESTED) |
| DEPARTMENT OF STATE, an Agency of the State of Delaware | : : | |
| Defendant | : | |

AND NOW COMES the above named plaintiff who complains of defendant as follows:

1. Plaintiff is, and was at all times relevant to this Complaint, a resident of the State of Delaware.

2. Plaintiff is, and has been since 2002 employed by Defendant, Department of State ("DOS") in Dover, Delaware as a Programmer Specialist. As of the time of the filing of this Complaint, Plaintiff was out of work on disability leave, caused by and resulting from actions hereafter set forth.

3. Prior to employment as a Programmer Specialist at DOS Plaintiff had been a Programmer at a different State Agency and had performed satisfactorily and without interpersonal difficulty but accepted a position at DOS because she viewed that change as an opportunity for career advancement.

**JURISDICTION**

4. Jurisdiction is based on the existence of a right arising under a federal statute. The action arises under Title VII of the Civil Rights Act of 1964, 42 USCA Section 2000(e) et. Seq., as amended by the Civil Rights Act of 1991, 42 USCA Section 704(a) of Title VII of the Civil

Rights Act. The jurisdiction of this Court is invoked to secure protection and redress for deprivation of rights secured by Federal and State law which prohibit discrimination against employees because of their sex.

## FACTUAL BACKGROUND

5. There were, during the duration of her employment, four programmers employed by DOS, two doing primarily mainframe work and two doing primarily UNIX (server programming) work. There have also been at various times one or more independent contractors assisting those employees with computer functions at DOS.

6. Prior to April 13, 2005 the plaintiff's supervisor was a Dan Carroll. After April 13, 2005 the Plaintiff's supervisor was a James Ravis.

7. One of the Programmer Specialists working at DOS along with Plaintiff was a Phil Fred (male) who had worked for DOS since 1977, and was previously involved in the Corporation Imaging System. Corporations are a major area of work within DOS.

8. Phil Fred by his words and actions after Plaintiff's transfer to DOS made it abundantly clear that he did not want to work with her and did not want a female working with him as a Programmer Specialist at DOS. He refused to train her in new or in unfamiliar aspects of the work despite the fact he was assigned to do so.

9. Plaintiff complained of the actions and attitudes of co-worker Fred towards her not only to Fred but also to supervisor Carroll, and Carroll's supervisor (and plaintiff's then second level supervisor), Ravis, but no reprimand or other action was taken against Fred by Carroll or by Ravis until events in April 2005. In fact, Carroll discouraged interaction between Fred and plaintiff, and the relationship between Fred and plaintiff got progressively worse.

10. Plaintiff also complained of the actions and activities of co-worker Fred towards her to those persons performing the personnel or human resources function for DOS, likewise without any significant result.

11. On or about April 13, 2005 supervisor Carroll threatened Plaintiff with physical violence, as well as committing verbal abuse, which he has never done to male subordinates or co-workers, creating or contributing to an existing hostile work atmosphere, and increasing Plaintiff's already existing feelings of stress at the workplace.

12. Plaintiff immediately complained of the physical threats and verbal abuse to next level supervisor Ravis and to persons performing the personnel function for DOS, and requested relief from the hostile work atmosphere.

13. At the time of Carroll's threats DOS was in the preliminary stages of making changes to the manner in which it provided technical services to the Division of Corporations (DOC), a sub agency of DOS, in the Corporate Imaging system.

14. Previous to this time assignments of work to Plaintiff were related to the UNIX function performed by DOS, as opposed to the main frame function which the new system under consideration would decrease in importance, and DOS was aware Plaintiff preferred working with the UNIX function.

15. DOS found Plaintiff's claim about the April threats against Plaintiff by Carroll, and the existence of a hostile atmosphere created by Fred and Carroll, to be factually true and reprimanded Carroll, changed the direct supervision over Plaintiff to Ravis, previously her second level supervisor and reprimanded Carroll and Fred, but took no action to require their interaction with plaintiff in the workplace be changed to be consistent with the normal work interaction present between them and male co-workers.

16. Not only did Ravis not seek to establish for plaintiff the same work interaction existing with male co-workers and Fred and Carroll, but he told plaintiff not to speak with Fred or Carroll, thereby further isolating plaintiff and assuring she would be seen as, and treated, differently than those co-workers.

17. Ravis had previously noticed the hostile work atmosphere existing in terms of the attitude of Fred towards Plaintiff and had specifically commented on same to Plaintiff. Plaintiff after his comments continued to try to informally improve the work relationship rather than seeking to have DOS take action against Fred.

18. Until the threats by Carroll, and Plaintiff's reporting of them to higher management, there had been for an extended time period meetings relating to work (including specific present issues as well as intended changes) involving Carroll and all programmer specialists, sometimes including contract workers, performing technical functions for DOS.

19. When Plaintiff formally complained to higher management about the threats of Carroll she included complaints about Fred, about how he refused to train her or assist when problems arose, was openly sarcastic towards her, and had a generally demeaning attitude. These behaviors caused plaintiff substantial stress and depression.

20. After the formal complaints by Plaintiff to higher authority at DOS, and the reaction of DOS as outlined in paragraphs 15 and 16, as well as its reprimand of Fred, both Carroll and Fred continued to refuse to talk to Plaintiff or to interact in any normal manner with her at work which made the performance of her work more difficult and more stressful. No male programmer specialists had been similarly treated by either Carroll or by Fred, and no programmers were so treated after April of 2005.

21. Carroll also ceased notifying Plaintiff of the meetings of the programmer analysts, the remainder of whom still reported to him, and she was thereafter unable to attend same despite the immediate benefit to the performance of her duties gained by such attendance.

22. Plaintiff advised Ravis of the refusal of Carroll and Fred to speak to her about work matters at the work place and also advised of being unable to attend the programmer analyst meetings, which were a retaliation by them for her reporting to DOS their actions towards her. Plaintiff also expressed her reasonable belief those earlier reactions and the retaliation occurred because they did not want a female, particularly one who sometimes questioned their actions or behavior, working with them as a programmer analyst.

23. Ravis did not act to require that Carroll or Fred treat Plaintiff as they did other co-workers, or to include her in the programmer analyst meetings, but rather told Plaintiff, in essence, what did you expect when you complained about them.

24. The reaction of Ravis indicated to Plaintiff that he believed that Carroll and Fred were entitled to retaliate against her for her reasonable belief and complaints she was being treated different by them because of gender, and they were also entitled to deny her participation in normal work activities, such as the programmer analyst meetings, because of her valid complaints about their actions and Ravis cared more about their comfort at work than her lawful right to be free of discrimination or retaliation.

25. Plaintiff through counsel grieved the retaliation by Carroll and Fred, and the non-correction of same by Ravis, and received a favorable resolution of that grievance by the then (now Human Resource Management) State Personnel Office (SPO). See Exhibit "A".

26. The administrative decision of SPO, given authority by State law to regulate such matters, noted that part of the "remedy" for the acts of Carroll and Fred had been to change the primary work functions of Plaintiff from UNIX to mainframe.

27. Throughout the processing of her grievance Plaintiff repeatedly advised DOS she wished to continue to do UNIX functions, fearing her assigned work would be changed to mainframe work which was due to be deemphasized by the intended changes in the Corporate Imaging system, in order to mollify Carroll and Fred.

28. Plaintiff after April 2005 and up to the time of the grievance decision complained to DOS that their "remedy" for the admittedly unlawful actions of Carroll and Fred was actually punishing her as Carroll and Fred continued to ignore her, her work participation was limited, and she was assigned work in an area which was not only less interesting to her but likely to be phased out as part of the contemplated changes.

29. DOS nonetheless refused to alter the "remedy", and Carroll and Fred continued to refuse to have any normal work relationship with Plaintiff, creating continuing mental stress and anguish at work for Plaintiff, and interfering with her ability to complete assigned functions.

30. After the aforesaid SPO decision DOS did Performance Plans for all of the Programmer Specialists, which Performance Plan creation is a normal personnel function.

31. Plaintiff attempted to resolve with DOS the fact that the Performance Plans created treated her differently from other Programmer Specialists, including projects assigned, areas of work, communication by e-mail rather than orally, etc.

32. Despite Plaintiff's efforts to cooperate in a resolution of the retaliation grievance, and the actions taken thereafter, she continued to be isolated at work, unable to work free of a hostile work atmosphere caused or exacerbated by defendants' employees or agents because of her

reasonable effort to remedy unlawful actions of a co-worker and supervisor, and the mental stress and anguish caused by these facts has left her unable to work.

33. Plaintiff has received a determination from the Delaware Department of Labor, the investigating agency, as well as a 90 day "Right to Sue" letter from the Equal Employment Opportunity Commission.  That "Right to Sue" letter is dated June 12, 2006, and was received days later, and is attached hereto as Exhibit "B".

## COUNT I

34. Paragraphs 1 through 33 are incorporated as if here set forth at length.

35. DOS has unlawfully retaliated against Plaintiff for her reporting of a hostile work atmosphere, based on gender, which hostile work atmosphere was created and exacerbated by the words and actions of Carroll and Fred.

36. The aforesaid unlawful retaliation has proximately caused such mental distress and aggravation as to cause Plaintiff depression, causing the need for medical treatment and inability to perform the duties of Programmer Specialist.

WHEREFORE Plaintiff prays this Honorable Court enter judgment for her and against Defendant in an amount sufficient to fairly compensate her the creation of a hostile work atmosphere, mental distress and aggravation leading to depression, and inability to work, as well as such other and further damages as are permitted by law, including lost wages, medical costs, depression, and further other compensatory or punitive damages, and counsel fees and interest.

## COUNT II

37. Paragraphs 1 through 36 are incorporated if here set forth at length.

38.  When Plaintiff complained to Ravis about the ongoing and less favorable treatment of her as a female and his reaction as supervisor she noted he appeared more concerned with Carroll and Fred's not wanting her in the workplace and keeping them happy at the workplace than he was concerned about the effects of their retaliation on her or her ability to work.

39.  Ravis tacitly agreed that he was more concerned about the feelings of Carroll and Fred than about Plaintiff's suffering, or any other effects of the discrimination or retaliation, by stating to plaintiff he would require a release of any potential claims from Plaintiff before agreeing to allow her to attend the meetings attended by all other Programmer Specialists.  No release was required of other programmers.  He did not deny the actions of Fred or of Carroll.

40.  The actions and comments of Ravis establish that the gender discrimination and retaliation experienced by plaintiff were known to defendant and defendant's refusal to halt such discrimination was intentional.

WHEREFORE Plaintiff prays this Honorable Court enter judgment for Plaintiff and against Defendant in an amount sufficient to fairly compensate her for the creation of a hostile work atmosphere, mental distress and aggravation leading to depression, and inability to work, as well as such other and further damages as are permitted by law, including lost wages, medical costs, depression, and other and further compensatory or punitive damages, and counsel fees and interest.

### COUNT III

41.  Paragraphs 1 through 40 are here incorporated as if here set forth at length.

42.  The actions of Fred and Carroll above set forth or referred to, as well as the failure of Ravis to correct the behavior of Fred and Carroll, under the circumstances unlawfully created a

hostile work environment based on gender which caused plaintiff pecuniary harm and intentional distress.

      WHEREFORE Plaintiff prays this Honorable Court enter judgment for her and against Defendant in an amount sufficient to fairly compensate her the creation of a hostile work atmosphere, mental distress and aggravation leading to depression, and inability to work, as well as such other and further damages as are permitted by law, including lost wages, medical costs, depression, and further other compensatory or punitive damages, and counsel fees and interest.

                             BROWN, SHIELS & O'BRIEN

                 BY_____
                          ROY S. SHIELS, ESQUIRE
                          P.O. DRAWER F
                          108 E. WATER STREET
                          DOVER, DELAWARE 19903
                          ATTORNEY FOR
                          302-734-4766   ID# 346

DATED:

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LORRAINE DUFFY, an Individual, | : : | C.A. NO. |
| Plaintiff | : | |
| V | : | AFFIDAVIT |
| DEPARTMENT OF STATE, an Agency of the State of Delaware | : : | |
| Defendant | : | |

STATE OF DELAWARE )
                  )SS
COUNTY OF KENT       )

     BE IT REMEMBERED, that on this     day of          2006, personally appeared before me, the subscriber, a Notary Public for the State and County aforesaid, Lorraine Duffy known to me personally to be such and she did depose and say the statements set forth in the foregoing Complaint are true and correct to the best of her knowledge and belief.

_____

     SWORN TO AND SUBSCRIBED before me the year and day aforesaid as witness my hand and seal of office.

_____
NOTARY PUBLIC

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
LORRAINE DUFFY

## DEFENDANTS
DEPARTMENT OF STATE, AN Agency of the State of Delaware

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Kent
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: Kent
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Roy S. Shiels, Esquire
Brown, Shiels & O'Brien
108 East Water Street  302-734-4766
Dover, DE 19901

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 670 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 U.S.C.A. Sec 2000(e) seq. - Gender Discrimination

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
N/A
JUDGE _____
DOCKET NUMBER _____

DATE: 7/27/06
SIGNATURE OF ATTORNEY OF RECORD: Roy S. Shiels

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____